see to the third case, give you the same preliminary instructions I've given the two previous cases. We have identified a covid situation here this very morning. We're going to be very careful about how we proceed. Ask that you keep your masks on. We also moving rather expeditiously through argument doesn't mean you're not to give the full flavor of the argument to us, but know that we've read your briefs carefully and we fully we actually considered very seriously to decide to But since we're here, circumspect in terms of your time today. So with that, we'll proceed with arguments and hear from the appellate in the case of the United States versus toll. Thank you. Lawrence Woodward for the appellate. May it please the court. And I concur with the court's comment. I think this was well briefed. And this is one of those cases where there's really not a lot of dispute about the law. It's really just a matter of the factual. And my my contention is that the combination of joinder and allowing the prior convictions tainted this case. I want to spend just a few minutes. I won't take all my time explaining it. First of all, with the joinder, I'm from long experience, painfully aware that, you know, the law in this circuit and the rules favors joinder. I think what we have here, though, is specifically I would ask the court, and I don't know that trial counsel emphasize this, to look at the timing because the tax counts, you know, the false tax return counts were off between February of 2014. And the last allegation was February of 2018. The fraud then was alleged to have begun in September of 2019, some 17, 18 months later. The witnesses were different. The factual scenario was different. The evidence was different. And I think the combination of the fact that they were unrelated types of cases, but also the time lag. This was not a case where the government alleged that while Ms. Toll was engaged in the conduct of preparing and submitting false tax returns, she was concurrently with that committing bank fraud for a financial. I can only draw from what I've seen in the case that the government didn't have any evidence that the false tax returns went on after February of 2018 because they didn't charge it. And then you fast forward almost, not quite two years, a year and a half, and they make these allegations about the, excuse me, about the mail and bank fraud. So I think that this is one of those rare cases where they should have been severed because they really were separate events. Also, if you look at the docket sheet, and I'm sure the court is aware, the initial indictment did not include the mail and bank fraud counts. Those were, I think it was about five months later, added in in a superseding indictment. I'm not privy to the government's investigation or, excuse me, how they came up with that evidence, but certainly the record is clear that it wasn't overlapping conduct. It wasn't going on at the same time. It wasn't being, there was nothing about the false tax counts that facilitated or somehow helped or was related to the bank fraud and wire fraud and vice versa because the case we have before us, the bank, the false tax case was over 18 months before the bank fraud and wire fraud even occurred. Can I ask you to address prejudice in this case? And I'll just, I'll sort of tell you my concern. I guess it's an absence of a concern. I mean, I can see why in a case like Hawkins, if you improperly join a carjacking with a felon in possession charge, you know, it's going to be highly prejudicial because as to the felon in possession charge, you now have evidence of a much more severe crime coming in. And as to the carjacking charge, you have evidence of a conviction coming in. And so that even a limiting instruction in circumstances like that, you would be worried about prejudice. But here, I mean, whether or not the crimes are sort of sufficiently similar that they were properly joined, they're pretty similar in their kind of level of severity and how disturbing they're likely to be to a jury. And so I'm just not seeing really where the showing of prejudice is in a case like this. Well, Your Honor, yes, I could address that. First of all, as the court's well aware, the bank and wire fraud cases are much, much more serious than the tax. You know, tax cases, the maximum punishment is three years. Bank and wire fraud, it can be up to 20 or 30 years. So they're certainly more, more serious in that regard. In terms of the prejudice, it kind of segues into the fact that what you had was that they had alleged that the felon was a felon. That for four years, between 14 and 18, she had filed or facilitated filing false tax returns. And then all of a sudden, they allege that a year and a half later, she starts into a completely separate scheme that's really not related to the preparation of taxes or related to deductions or income. And that segues into my sort of overarching argument that when you take that in connection with the court allowing in the prior convictions, I read, I didn't try this case, but I read the record carefully and talked to the attorney that did try it. And I know, I know Mr. Sheehan, I know the lawyers that tried this case, but if you read this record, Judge Dubar let those convictions in. And then the case, from my reading of it, all it was ever about was those, you know, every open statement, witnesses, every time there was a talk. Can you just clarify for me, as I understand it, you are not arguing in your brief that the district court order allowing the evidence in, the convictions in, for this limited, these limited 404B purposes, you're not arguing that that was incorrect. You're arguing that, I think you're about to say, that whether or not that was correct, they ended up using the convictions beyond the scope of that order. I think the way I would say that, Your Honor, I think my stronger argument is, is that they, I did make sort of the allegation that it's. I don't see the other argument at all in your brief. But certainly my, my main focus is it, it exceeded the scope of what it was allowed for in the way that it was used. One of the things. I don't want to take up a lot of your time, but I do, I really want to make sure you have a chance to explain this to me, because I, I'm struggling to sort of get my hands around this. The judge, the district court allows the evidence for these limited, the convictions for these limited 404B purposes. Your argument is that they went, the government went outside the scope of that use and used them to impeach, to sort of call into question the trustworthiness of the defendant and her character witnesses. But you're allowed to use convictions for that purpose. That's not a 404B, that has nothing to do with the, with the admission of the evidence under 404B for the limited purposes. That comes in under 404A, and there's other rules about using convictions to, you're allowed to use it as character evidence going to trustworthiness. And so I'm not understanding how these two arguments sort of fit together. Is my question clear? I think it is, your honor, and I think the way that I, I just think the way that the government used it, and I tried to cite all of the different, I think I got them all, every time they mentioned it in the brief, it tainted the trial from the standpoint of, you know, Judge Dumas allowed it in, gave a limiting instruction, but he certainly didn't give a limiting instruction every time it was used or argued, and I realize perhaps he's not required to, but this court is certainly aware that prior convictions are some of the most damaging evidence that any defendant can face, particularly in the government's case in chief. And one of the things the government kind of dinged the trial lawyer for, if that's the right word, was that the trial lawyer that defended Ms. Tull himself mentioned the convictions and brought them up a few times. Well, once you know they're coming in as a trial tactic, as a trial lawyer, obviously you want to confront it and not leave it for the government to bring it up all the time, but my overarching argument, Your Honor, is the combination of the way that that was used and the fact that Judge Dumas allowed the government to put on evidence of separate crimes that happened a year and a half, much more serious crimes that happened a year and a half after the tax case, my reading of the trial record and what I would say to the court is that some of that, whatever the intention was, is that Ms. Tull is a bad person, and she's being put on trial for what she is, not for what she did, and that's sort of not where we're supposed to go. So I hope that answers Your Honor's question, and unless anyone else has any other questions, I think those are the points that I would like to make. Thank you. You have some time in reserve for rebuttal, too. Yes, sir. We'll hear from Mr. Sheen. Good morning. May it please the court. My name is Daniel Sheen, and I represent the United States in this appeal. Given the court's comments about the COVID situation, I'll try to keep my comments brief with respect to the sufficiency of the evidence. I would just refer the court to our statement of the case and our brief at pages 15 through 30, which clearly set forth the overwhelming amount of evidence that was used to convict Ms. Tull with both respect to the 33 counts of aiding and assisting in the preparation of false tax returns and the five counts of wire fraud. I'd like to spend the bulk of my time addressing the main points raised by the appellant this morning, and I'll start first with the use of the prior convictions. Judge Harris, you raised a very valid point that we made in our brief that once Ms. Tull testified and once her character witnesses took the stand and testified about her reputation for truthfulness and honesty, that was impeachment evidence that came in during Ms. Tull's presentation of the case. And just to give the court kind of a visual, during the government's case in chief, we had 20 witnesses. There was only one witness who testified about Ms. Tull's criminal history in our case in chief, and that was the special agent who was involved in the investigation. Her testimony took up about four pages in total out of the thousands of pages of the record that's before the court here in the government's case in chief, and it was limited to simply just introducing into evidence those convictions and reading into the record a stipulation that had been entered into by Ms. Tull. Contrast that with the use of the prior convictions in Ms. Tull's case in her defense. She had seven witnesses total testify, including herself. And by my count, five out of those seven witnesses testified about her criminal history because her attorney asked them about her reputation for honesty and truthfulness in the community, and then also proactively on direct examination brought up her criminal history. And he did that with Ms. Tull as well. So to the extent the appellant complains that it came up too much during the trial, the majority of it came up through the presentation of Ms. Tull and her witnesses in her own defense, and that was properly within the scope of cross-examination given the nature of the testimony on direct examination. I would also add, and we made this point in our brief, that when Ms. Tull gave testimony on direct examination about her criminal history, it was misleading at best, and I would also contend that it was just wrong and not truthful. She made misleading statements that I think mischaracterized the nature of those prior convictions, and that was part of the reason that it became a bit of a sideshow during her presentation of her case. I would point the court to this court's decision in the Johnson case, which deals with 404B, and it says where a defendant by her own testimony and the testimony of her other witnesses attempts to depict herself as someone whose character and conduct is at odds with the possession of the state of mind that's required for a guilty verdict, she can be considered to have forfeited the protection of 404 with respect to character evidence. So that's exactly what happened in this case. We've also argued in our brief that the government did not go outside the scope of the district court's 404B order in referring to Ms. Tull's criminal history. The district court issued a thorough opinion, which is on the district court docket, at number 92, which explains he did not believe, after having the benefit of observing the seven-day trial, that we went outside the scope of the order that he issued pertaining to her criminal history. And the way in which we brought up her criminal history was proper in order to impeach her and her witnesses who testified on her behalf. To the extent the appellant raises the issue of 404B as to whether the district court was correct in the first place in allowing that evidence, we contend that the district court got that issue correct for the reasons stated in its order. I would also like to orient the court to the record to explain one of the primary reasons why the criminal history was brought in in the first place. We explained at trial, as part of the process of applying to be a tax preparer with the IRS, an individual has to submit an application to the IRS and provide information about her background so they can screen and make sure someone has the proper qualifications to prepare taxes on behalf of the public. And as part of that application process, an individual has to state whether or not they've had any prior felony convictions. The evidence that we presented at trial was that when Ms. Tull applied for her tax preparer identification number, she did not disclose to the IRS that she had those prior criminal convictions for embezzlement and forgery. And had she done so, she never would have received a tax preparer identification number in the first place. So we contend that that showed her intent and her willful state of mind in connection with the operation of the business by the fact that when she went to apply for this in 2010 and 2011, she failed to disclose to the IRS the truth about her criminal history and background. On the issue of joinder, the district court correctly concluded that the wire fraud offenses were properly joined with the tax-related offenses under Rule 8A because they were of the same or similar character. The district court reasoned that all of the offenses involved missed tolls, false and fraudulent actions taken on behalf of her tax preparation business, Phoenix Financial Tax Service, in order to deceive particular victims. In the case of the wire fraud, the victim was a lending institution called for a financial. In the case of the tax-related counts, the victim, of course, was the IRS. The evidence presented at trial and outlined in the indictment showed that all the actions that she was taking that were criminal in nature were on behalf of her business and were done with the motive and intent to preserve and promote her business in order to make more money for her business and for herself. The loan applications were submitted in the name of Phoenix Financial Tax Service. The tax returns, of course, had the name of Phoenix Financial Tax Service on them and were submitted to the IRS using specific employer identification numbers and e-filing numbers connected to Phoenix Financial Tax Service. And the bank accounts, of course, that stood to benefit from receiving these funds were in the name of Phoenix Financial Tax Service. They were business bank accounts in connection with the wire fraud counts. Another connection between the two charges that is mentioned in the indictment is the fact that Ms. Toll used false and fraudulent tax returns in connection with both sets of crimes. So with the tax-related counts, of course, it was the false and fraudulent tax returns that had materially false items on them that were submitted to the IRS. With the wire fraud counts, she had to prove her proof of ownership of the company, so she submitted a false and fraudulent corporate tax return for the tax year 2018, which was never actually submitted to the IRS. But she submitted that for financial in order to convince them to lend money to her that they otherwise would not have done. So that's another connection between the two schemes that was sufficient for purposes of joinder under Rule 8A. We think the joinder was very strongly supported by two out-of-circuit cases that we've cited in our brief, the Alexander case from the Seventh Circuit and the Levine case from the Tenth Circuit, both of which have upheld joinder in very similar circumstances where different fraud-related charges were joined together and centered around the operation of a business, and the crimes of the defendant were intended to promote or preserve the business. And that is, we contend, exactly the case that was presented here, and we would urge the court to follow similar reasoning to the Alexander and the Levine cases because they're in keeping with this court's general precedent in regards to joinder. This court has specifically said that the same or similar character requirement under Rule 8A is not onerous for the government to meet. This court permits very broad joinder because of the efficiency of trying a defendant on related counts in one case and because of the concerns of having to impanel additional jurors, wasting limited judicial resources, and duplicating witness testimony, all of which were concerns in this case. The district court also did not abuse its discretion in denying severance under Rule 14A, primarily because Ms. Toll just did not make the strong showing of prejudice necessary to warrant that prior to trial. This court has said that convincing a district court of severance is a daunting task, and the speculative allegations of prejudice do not suffice to warrant severance of charges, and that's exactly what Ms. Toll presented at the district court level. It was a speculative argument and allegation that trying her on both sets of counts would prejudice her case in general, but there wasn't any specific showing or proffer that she intended to testify as to one set of counts but refrain from testifying on the other set of counts. Even if the court concludes that there was any error associated with the court's analysis on Rule 8 or Rule 14, that error was harmless for several reasons. The first would be the overwhelming amount and nature of evidence that established Ms. Toll's guilt on both sets of charges. As I said earlier, that's outlined very clearly in our brief at pages 15 through 30. Second, if there was any error, it was harmless because of the limiting instruction that the court gave with respect to the consideration of separate charges. The district court clearly instructed the jury that it was to consider all the counts separately, and a guilty finding on one count should not control the jury's verdict as to another count. And the third and final reason that any error was harmless in this case is because the evidence was distinct and easily segregated as between the tax-related counts and the wire fraud counts, so there was no risk that there was going to be an improper spillover effect, and the jury might be inclined to find Ms. Toll guilty on one set of counts just because of the evidence on another set of counts. The evidence was very distinct both in terms of the documents the government presented and the witnesses that the government presented as to wire fraud and the tax-related counts. Just with respect to the issue of timing, we don't dispute that there was a gap of about 18 months between the date of the filing of the last fraudulent tax return and the submission of the fraudulent loan applications for a financial. But the cases we've cited, specifically I believe the Alexander case, shows that joinder is still permitted when the offenses are of a like class, even if they are not temporally related. So we would contend, based on just the similarities between the offenses, the involvement of the business in the operation of both sets of schemes, that that 18-month difference is not enough to find that there was any error in adjoining the two offenses in this case. I do have eight minutes left. I don't have any more to argue, but if Your Honor has any questions, I'd be happy to address them. Thank you. Thank you. Mr. Sheehan, Mr. Woodup, you have a question. Just a couple of brief points. I won't reply to what I said. First of all, with the United States analysis of the joinder, I don't think that it's a proper legal standard to apply to say who benefits from the offense. In the case that Judge Harris mentioned, I think any time somebody commits offenses, they feel like they're going to benefit from them in some way, be it possessing a firearm after being a felon or committing a farjacking. So I don't think that the analysis that the government's position that her business benefited from both offenses is the right legal analysis. I realize that joinder, as Mr. Sheehan pointed out, is onerous and it's a heavy burden for us, but it doesn't mean that it's an impossible burden, particularly in a case like this, which there is a big gap in time, and the second set of offenses are much more serious than the first set. With regard to harmless error, I've been coming up here a long time banging my head against harmless error. The government always says that we put on more evidence than we needed and it didn't really matter because even if it hadn't been in there, we would have still had plenty of evidence to convict somebody. I kind of always analogize that to somebody who's being treated for a serious illness gets shot and killed and you kind of say, well, it didn't really do anything because they were going to die from the illness anyway. I think that that's at best a lot of times a speculative exercise, and I would submit to you that in a case like this where you have the government calling one of their first witnesses to tell the jury this person's been convicted of three other crimes and we're trying two sets of cases that are completely unrelated, both factually and temporally, together. I get back to where I started. I think the combination of that tainted this case and that Ms. Tall, the case should be remanded and Ms. Tall should be given a chance to have two trials that focus on two separate and temporally unrelated sets of facts. Thank you. All right, I want to thank both of you for your consideration and advice on this. Ideals of representing your clients zealously within the bounds of the law. As we proceed forward, I do want to also thank Mr. Wood for your court representation here today. Without the services of those who are court appointed, it would be very difficult to provide the kind of quality representation you exemplify today. And I also thank the government's counsel for your very good argument, too. So with that, normally we'd come down and shake your hands. Both of you know that well. We're not going to do that during the COVID times, but we're about to conclude court for this session and move to September when we come back. We hope that the situation of health and concerns will be abated to the point that we can do that. In the meantime, we wish you all well. Thank you, Your Honor. Thank you. Thank you.
judges: James Andrew Wynn, Pamela A. Harris, Allison J. Rushing